# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RONALD JAMES AMISON, ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v. ) | 2:07-cv-08008-JHH-JEO |
| ) | 2:04-cr-00298-JHH-JEO |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Ronald James Amison initiated the present action by filing a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (07-8008 at Doc. 1).[1] Upon consideration of the defendant's arguments, the Court finds that the motion is due to be denied.

## BACKGROUND

The defendant was charged on September 2, 2004, in a three-count superseding indictment. He was charged in Count One with possessing marijuana with the intent to distribute the same in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). (04-0298 at Doc. 6). Count Two charged that he carried a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). (*Id*.). Count Three charged that he possessed a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (*Id*.).

The defendant entered into a plea agreement on October 14, 2004. (*Id*. at Doc. 12). In exchange for his plea of guilty, the United States agreed to recommend that the defendant receive a three-level reduction under the Sentencing Guidelines for acceptance of responsibility and that

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the Court's record in this case. The pleadings from the original criminal case are designated as "04-0298" and the pleadings on the motion to vacate are designated as "07-8008".

he be sentenced at the low end of the advisory guideline range.  (*Id*.).  As a part of the plea agreement, the defendant relinquished his right to appeal his conviction and to file a motion pursuant to 28 U.S.C. § 2255, except that the defendant reserved his right to raise a claim of ineffective assistance of counsel in an appeal or post-conviction proceeding.  (*Id*. at p. 9).

The defendant was sentenced on February 17, 2005, to a total term of incarceration of 240 months.  (04-0298 at Doc. 21).  The defendant filed a notice of appeal.  (*Id*. at Doc. 22).  After a review of the record and consideration of the issues, the defendant's appointed counsel filed a motion to withdraw from further representation and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no meritorious issues for appeal.

On March 15, 2006, the Eleventh Circuit Court of Appeals issued an unpublished opinion in which it (1) found counsel's assessment to be correct, (2) noted that no arguable issues of merit were presented, (3) granted counsel's motion to withdraw, and (4) affirmed the defendant's conviction and sentence.  (04-0298 at Doc. 29).  A mandate was issued on April 13, 2006.  (*Id*.).

The defendant filed the present motion on March 2, 2007.  (*Id*. at Doc. 31 and 07-8008 at Doc. 1).  In support of his claim for relief, the defendant asserts that (1) his guilty plea was entered unknowingly, involuntarily and unintelligently, and without the advice of competent counsel, (2) his guilty plea was coerced because counsel failed to advise him that his sentences on each count could run consecutively, (3) he did not possess a full understanding of the consequences of his guilty plea, (4) his guilty plea was not entered with the advice of competent counsel, (5) counsel was ineffective in advising him to plead guilty without conducting a reasonable investigation to determine that no plea offer could benefit him, (6) counsel was ineffective for failing to investigate and advise him of the true consequences of his guilty plea,

(7) counsel was ineffective for failing to investigate his criminal history before advising him to plead guilty, (8) counsel was ineffective for failing to seek a downward departure to reward him for accepting responsibility, (9) counsel was ineffective on direct appeal by failing to argue meritorious issues for review and specifically the validity of the guilty plea, and (10) his sentence was imposed in violation of the Constitution or laws of the United States.  (07-8008 at Doc. 2, pp. 6-19).  The magistrate judge assigned this matter required the United States to file a response to show cause why the requested relief should not be granted.  (*Id*. at Doc. 4).  The United States responded that all of the defendant's claims, except his ineffective assistance of counsel claims, are barred from review because he waived them in his guilty plea.  (*Id*. at Doc. 6, p. 6).  Additionally, the Government responded that the ineffective assistance of counsel claims are due to be dismissed on the merits.  The defendant filed a "Traverse" to the Government's response.  (*Id*. at Doc. 8).

## DISCUSSION

### A.     Waiver of Claims Not Alleging Ineffective Assistance of Counsel

The defendant agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he entered his guilty plea in this case.  That waiver is evidenced by the plea agreement.  (04-0298 at Doc. 12, p. 8).  Additionally, he acknowledged that waiver during his guilty plea hearing.  Specifically, the record is as follows:

> THE COURT:  It also is signed on page 9, and there you are waiving your right to appeal the conviction, and you are also waiving your right to appeal the sentence with certain limited exceptions that are expressly set forth in the written plea agreement.

3

> Did you have sufficient opportunity to discuss, not only the entire plea agreement as an entity, but specifically each of the provisions immediately above your signature with your attorney Mr. Bloomston?
>
> THE DEFENDANT: Yes, sir.

(*Id*. at Doc. 24, p. 7). The defendant, who was under oath, indicated that he understood the plea agreement and the waiver provisions. (*Id*. at p. 7).

At sentencing, the Court discussed with the defendant his right to appeal. The Court also informed him that if he believed that the waiver provision of the agreement was unenforceable, he could challenge that on appeal as well. (*Id*. at Doc. 25, p. 23).

The Eleventh Circuit Court of Appeals has held that an appeal waiver provision in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001). *See also Williams v. United States*, 396 F.3d 1340 (11th Cir. 2005) (a valid sentence-appeal waiver entered into voluntarily and knowingly pursuant to a plea agreement, precluded the defendant from attempting to attack his sentence in a collateral proceeding through a claim of ineffective assistance of counsel during sentencing). Similarly, a waiver of collateral review has also been approved by the Eleventh Circuit so long as the United States demonstrates that the waiver was made knowingly, intelligently, and voluntarily. *Allen v. Thomas*, 161 F.3d 667 (11th Cir. 1998); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). The Eleventh Circuit views a waiver as a contract between the Government and a criminal defendant. It has stated:

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. *See United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).

> In this case, [the appellant's] waiver was clearly knowing and voluntary – he was specifically questioned by the district court regarding the waiver of his right to appeal. *See United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

*United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).

The present record demonstrates that the defendant's assent to the terms of his plea agreement, including his waiver of the right to seek relief in a § 2255 motion, was knowingly, intelligently, and voluntarily made. The Court specifically informed the defendant that the waiver in his agreement was enforceable, and that the Eleventh Circuit was the appropriate forum for any challenge to the enforceability of the waiver. Additionally, the record demonstrates that the defendant had the ability to understand his decision to waive these rights. Accordingly, the portion of the defendant's motion that does not assert ineffective assistance of counsel claims is barred from further review by this Court.

    **B.**    **Ineffective Assistance of Counsel**

The defendant alleges that his counsel was ineffective in numerous ways. Specifically, he asserts that his trial counsel: (1) failed to conduct a reasonable investigation to determine that no plea offer could benefit him before advising him to plead guilty; (2) failed to investigate and advise him of the true consequences of his guilty plea; (3) failed to investigate his criminal history before advising him to plead guilty; (4) failed to seek a downward departure to reward him for accepting responsibility; and (5) failed to argue meritorious issues and the validity of his guilty plea on appeal. The United States retorts that the claims are without merit. (07-8008 at Doc. 6, pp. 11-23).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or . . . sentence has two components. First,

> the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The defendant must satisfy two requirements to prevail on an ineffective assistance of counsel claim.  He must show that "(1) 'counsel's representation fell below an objective standard of reasonableness,' *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and that (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' *id*. at 694, 104 S. Ct. at 2068.  In this circuit, we have referred to the latter element as the 'prejudice' prong and the former element as the 'performance' prong."  *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  When considering such claims, a Court need not address both components because a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel.  *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms.  The purpose of ineffectiveness review is not to grade counsel's performance. . . .  To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . .  The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

> Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .
>
> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added).

With regard to the second prong under *Strickland*, it is not enough to show that an error had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on an ineffective assistance claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

Because the plaintiff's first three claims are substantially similar, the Court will address them together and will address the claims regarding the request for downward departure and appeal separately herein.

### 1. Claims Regarding the Guilty Plea & Sentence

The defendant asserts that at the time of his guilty plea, he was satisfied with counsel because he did not know at that time that counsel was "deceiving and coercing him into pleading

guilty." (07-8008 at Doc. 8, p. 7). Had his counsel properly investigated his criminal history and the effects that history would have on his sentence, the defendant asserts that he would not have pled guilty. (*Id*.). At the plea hearing, the Court made clear to the defendant that it could structure a sentence independent of the plea agreement or the United States Attorney's recommendations:

> THE COURT: Do you understand, for example, that if I accept your plea of guilty, at such time later as we proceed with sentencing, I could structure a sentence that could be precisely in accordance with the terms of the written plea agreement, or in accordance with the recommendation the U.S. Attorney makes consistent with the terms of the plea agreement; or I could structure a sentence that might be viewed as more severe or less severe than the one contemplated by the plea agreement and yet you could not withdraw your plea of guilty. Do you understand that?
>
> AMISON: Yes, sir.

(04-0298 at Doc. 24, pp. 8-9). Additionally, the United States retorts that there is no evidence that Amison misunderstood he could be treated as a career offender. In fact, the Court made it clear at the plea hearing what the defendant's sentence could potentially be and Amison acknowledged understanding:

> THE COURT: Do you understand that if I accept the plea of guilty, all that remains is for a sentence to be imposed? And I am required, by law, to explain to you what the maximum penalty could be for the offenses to which you are entering a plea of guilty.
>
> And the maximum sentence that could be imposed for the offense charged in Count One, would be a fine of $250,000, and 5 years in the penitentiary, followed by a term of supervised release of 2 years.
>
> But, if you have on your record one or more prior felony drug convictions, then that changes from a maximum 5-year sentence to a maximum 10-year sentence in prison. Do you understand that?

> AMISON:   Yes, sir.
>
> THE COURT: With regard to Count Two, the charge of carrying a firearm in relation to the commission of the Count 1 drug offense, the Court is required to impose the penalty under that count as a consecutive sentence to the Count 1 offense. And the Court is required to impose a sentence of not less than 5 years for the Count 2 offense. Do you understand that?
>
> AMISON:   Yes, sir.
>
> THE COURT: And then with regard to the Count 3 offense, that is the possession of a firearm as a convicted felon, the normal sentence for that is custody of not more than 10 years in the penitentiary, followed by a term of not more than 3 years supervised release, and a fine of not more than $250,000.
>
> But if you, when you committed the offense charged in this indictment, had on your record three prior felony convictions for either some combination of a serious drug offense, or a violent felony offense, then the maximum penalty which could be imposed under Count Three would be not less than 15 years, nor more than life. Do you understand that?
>
> AMISON:   Yes, sir.

(*Id*. at pp. 9-10).

In the sentencing memorandum, the petitioner's counsel set out his prior offenses and why those offenses should not be used to categorize the defendant as a career offender. Additionally, counsel argued against career offender treatment to the Court. Specifically, counsel argued:

> MR. BLOOMSTON: Yes, Your Honor. One of the problems that we've had with the guidelines, at least from a criminal defense standpoint, is its sterile approach and it simply looking at numbers and offenses and not looking any deeper.
>
> The two predicate offenses that put Mr. Amison into this career offender category need a little bit of a closer look and those were outlined in the sentencing memorandum. The first offense,

9

>  Mr. Amison was 20 years old.  He was unarmed.  It was a robbery third conviction which he pled guilty to.
>
>  . . . .
>
>  The second predicate offense was also a robbery third degree.  After having a felony on his record, Mr. Amison was still given a straight probationary sentence on the second offense.  And, Your Honor, I've dealt in the state courts enough to where I believe it to be true, that that kind of offer would have never been made . . . if [the judge] thought that Ronald Amison was a danger or that he was a violent and dangerous person.
>
>  These relatively light sentences, Your Honor, can be considered by the Court in determining whether classification as a career offender, in this instant matter, is exaggerating Mr. Amison's criminal history.
>
>  His criminal history is lengthy.  It takes up several pages.  But in a careful review of that criminal history, Your Honor, there has been one other custodial sentence, and it was for a probation violation on a misdemeanor in the City Court of Birmingham.
>
>  As I've shared with Ronald this morning, I believe that when the City of Birmingham court system saw him coming, they just knew it was going to be a good payday.  Unfortunately he did not have counsel with him on a number of those occasions, and I believe that with a little bit better advice, he probably could have avoided some of those convictions.
>
>  However, as far as being incarcerated before, Mr. Amison has a history, but it's a history of probationary sentences.

(Doc. 25 at pp. 8-9).  Although the defendant argues that his counsel failed to investigate his criminal history before he agreed to plead, the Court finds to the contrary.  Specifically, in the plea agreement, the defendant stipulated that he had been convicted of third degree robbery in two separate cases as well as Uttering Counterfeit Obligations.  (Plea Agreement at p. 2).

Upon full consideration of this matter, the Court finds that the defendant is entitled to no relief for a number of reasons.  First, the United States is correct that the defendant did not voice any dissatisfaction with counsel at the plea hearing.  To the contrary, the record indicates his satisfaction with counsel:

> THE COURT: Let me ask you right now.  Are you satisfied with the services that Mr. Bloomston is rendering for you in this case?
>
> AMISON:  Yes, sir.
>
> THE COURT: You're sure of that?
>
> AMISON: Yes, sir.
>
> THE COURT: All right.  When you discussed the written plea agreement with him, did he satisfactorily explain the provisions of it to you and to your satisfaction?
>
> AMISON: Yes, sir.
>
> THE COURT: And are you satisfied with the services he is rendering for you?
>
> AMISON: Yes, sir.
>
> THE COURT: Did you have any questions of him with regard to the plea agreement or the meaning of the plea agreement or how it might operate that he did not answer to your satisfaction?
>
> AMISON: No, sir.

(04-0298 at Doc. 24, pp. 7-8).  These sworn statements by the defendant cannot, and should not, be ignored by the Court.  They clearly demonstrate his satisfaction with counsel.  They also confirm that they met and discussed the defendant's situation and his options.  These statements "constitute a formidable barrier in a[] subsequent collateral proceeding" such as this.  *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977).

Second, the defendant has not demonstrated that counsel's performance was deficient. Although the defendant asserts that trial counsel failed to investigate his criminal history and advise him that he could receive as strict a sentence based on his guilty plea, the record shows that at least the defendant's prior felony convictions were known at the time of the plea. Furthermore, the Court clearly explained to the defendant what his sentences could be on each of the counts, to which the defendant affirmatively stated that he understood. The defendant simply has not offered any evidence that his counsel coerced or deceived him into pleading guilty and any such assertion is contradicted by the record. As set out herein, the defendant was fully advised as to the possible sentencing ranges and as to how his prior convictions could affect his sentence. Furthermore, the defendant was also instructed that the Court could fashion a sentence totally independent of the plea agreement. The fact that he is dissatisfied with the sentence he received is insufficient to establish that his counsel's performance was unreasonable.

It is evident based upon the record before the Court that the defendant is entitled to no relief on this aspect of his ineffective assistance of counsel claim. The claim, therefore, is due to be denied.

### 2. Claim Regarding Failure to Seek a Downward Departure

The defendant next asserts that counsel was ineffective in "failing to move the Court for a downward departure to reward him for acceptance of responsibility." (07-8008 at Doc. 2, pp. 17-18). More particularly, he asserts that because his Sentencing Guidelines range was above the statutory maximum for the particular offenses of conviction, he was not "rewarded" for accepting responsibility for his conduct. (*Id*. at p. 17). The defendant cites *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995), to support his position. (*Id*.). The United States retorts that counsel

was not ineffective because the Government did recommend that the defendant receive credit for acceptance of responsibility.  (07-8008 at Doc. 6, p. 22).

In *Rodriguez*, the Eleventh Circuit Court of Appeals stated that a trial court did have the authority to depart downward from a U.S.S.G. § 5G1.1(a)[2] sentence when a defendant's guideline range exceeds the statutory maximum after allowing for the three level adjustment under U.S.S.G. § 3E1.1(b) for acceptance of responsibility.  *Rodriguez*, 64 F.3d at 641-42.  The court stated:

> . . . . But a court has the statutory authority to impose a sentence outside of the guidelines range when "the court finds that there exists an aggravating or mitigating circumstance . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  *Id*.; U.S.S.G. § 5K2.0, p.s. . . .

*Rodriguez*, 64 F.3d at 642.

The defendant is entitled to no relief on this claim.  *Rodriguez* is not applicable because the total statutory maximum sentence for the offenses of conviction in this case exceeded his guidelines range.  The maximum penalty under Count One (possessing marijuana with the intent to distribute) was five years.  *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).  The maximum under Count Two (carrying a firearm during and in relation to a drug trafficking offense) was life.[3]  *See* 18 U.S.C. § 924(c)(1)(A).  The maximum under Count Three (possessing a firearm after being convicted of a felony) was ten years.  *See* 18 U.S.C. § 922(g)(1).  At sentencing, the court could have, and arguably should have, structured a sentence to reach the applicable guideline range of

---

[2]U.S.S.G. § 5G1.1(a) provides: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."

[3]To the extent the presentence report states that "[b]ecause the guideline range [(262-327)] exceeds the statutory maximum of counts one and three, the statutory maximum sentences of these counts (180 months) becomes the guideline sentence, U.S.S.G. § 5G1.1(a)," it was incorrect.  (PSR at ¶ 66).

262 to 327 months. By way of explanation, the court could have imposed 60 months custody on Count One, 120 months on Count Three, and 82 months on Count Two, all to run consecutively to achieve a Guidelines sentence of 262 months. *See* U.S.S.G. § 5G1.2, Application note 3(B)(ii).[4]

In this case, the Court sentenced the defendant to 240 months which is 22 months lower than the guideline range, and which resulted in a benefit to the defendant. Thus, any error enured to the benefit of the defendant. His argument that he "was sentenced to the statutory maximum as to each of the three counts, with no reward for his accepting responsibility," simply is wrong. (07-8008 at Doc. 2, p. 17). Because the Court could have imposed a sentence in the 262-327 range, he did receive the benefit of the three level reduction for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(c)(3).[5] Accordingly, the defendant's claim is without merit and is due to be dismissed.[6]

### 3. Claim Regarding the Defendant's Appeal

The defendant next asserts that his counsel was ineffective on appeal by representing to the Court that there were no meritorious appealable issues for review. (07-8008 at Doc. 2, p. 18).

---

[4] Application note 3(B)(ii) to this section provides an example of how the section on multiple offenses should be applied in a career offender situation. It states:

> The defendant is convicted of one count of 18 U.S.C. 924(c) (5 year mandatory minimum), and one count of violating 21 U.S.C. 841(b)(1)(C) (20 year statutory maximum). Applying § 4B1.1(c), the court determines that a sentence of 327 months is appropriate (applicable guideline range of 262-327). The court then imposes a sentence of 240 months on the 21 U.S.C. 841 count and a sentence of 87 months on the 18 U.S.C. 924(c) count to run consecutively to the sentence on the 21 U.S.C. 841 count.

U.S.S.G. § 5G1.2, Application note 3(B)(ii).

[5] The presentence report correctly notes that the career offender guideline range for the defendant is 262-327 instead of 360-life, which would have been applicable but for the § 3E1.1 reduction for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(c)(3).

[6] Were the Court to grant the defendant's motion to allow resentencing, the recommended sentencing range would be at the higher level than previously computed in the presentence report.

In response, the United States asserts that "[c]ounsel does not provide ineffective assistance when frivolous arguments are not raised on appeal, *Jones v. Barnes*, 463 U.S. 745 (1983); see also *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (Attorney not ineffective for failing to raise a meritless issue.)"  (07-8008 at Doc. 6, p. 23).

After independent review of the appellate record, the Eleventh Circuit Court of Appeals also found no arguable issues of merit.  (04-0298 at Doc. 29).  Having already found that the bases for the defendant's appeal (i.e., that his guilty plea was coerced, that he did not have a full understanding of the consequences of his plea, and that his plea was not entered without the advice of competent counsel) are without merit, this Court also finds that the defendant's claim of ineffective assistance of counsel regarding his appeal is without merit and, therefore, due to be denied.

**C.  Imposition of Sentence in Violation of the Constitution**

Lastly, the defendant asserts that his sentence was based on "constitutionally invalid convictions, thus violating the Constitution or laws of the United States."  (07-8008 at Doc. 2, p. 19).  However, the defendant also concedes that this claim is not ripe for review as it has not been exhausted in the state courts.  (*Id.*).  Additionally, as the defendant correctly points out, "[g]enerally, a defendant in a federal sentencing proceeding has no constitutional right to challenge the use of a previous state conviction to enhance a subsequent federal sentence.  *See Curtis v. United States*, 511 U.S. 485 (1994)."  (*Id.*).  Therefore, this aspect of the defendant's motion is due to be denied because he has demonstrated no entitlement to relief at this juncture.

**CONCLUSION**

Premised on the foregoing, the defendant's motion to vacate is due to be dismissed with prejudice. An appropriate order denying this motion will be entered contemporaneously herewith.

**DONE** this the   26th   day of March, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE